IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CASEY T. KELLERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:14cv295-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  THE ISSUES

**A.  Introduction.**  Kellerman was 47 years old on the date of onset and 49 years old at the time of the hearing before the ALJ.  (R. 146).  He has completed eleventh grade.  (R. 192).  His prior work experience includes work as a "dry wall applicator."[5]  (R. 27).  Following the administrative hearing, the ALJ concluded that Kellerman has severe impairments of "diabetes; obesity; status post removal of left shoulder squamous cell carcinoma; gastroesophageal reflux disease and moderate left carpal tunnel syndrome."  (R. 19).  The ALJ concluded that Kellerman was unable to perform his past relevant work.  (R. 20, 27).  Nonetheless, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R. 28).  Consequently, the ALJ concluded that Kellerman was not disabled.  (*Id.*).

**B.  The Plaintiff's Claims.**  Kellerman presents two issues for the Court's review.

1. The ALJ committed error in determining the claimant's physical residual functional capacity; and

2. The ALJ failed to properly apply the pain standard.

(Doc. # 14, Pl's Br. at 2 & 6).

### IV.  DISCUSSION

This court's ultimate inquiry is whether the Commissioner's disability decision is

---

[5] Kellerman hung sheetrock for a living.

supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the ALJ erred as a matter of law when she failed to fully develop the record.

While a claimant has the burden of proving that he is disabled, an ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003);  *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985). "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking.  It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad.  *Id*.  The regulations also make the nature of the SSA proceedings quite clear.  They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

The ALJ is not free to simply ignore medical evidence, nor may she pick and choose between the records selecting those portions which support her ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992).  When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why she accepted or

rejected one opinion or record over another. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).[6] "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). As will be explained, the court concludes that the ALJ failed to fully and fairly develop the record concerning the plaintiff's pain and vision acuity. Because the ALJ failed to properly develop the record regarding these conditions, it follows, therefore, that her determination that the plaintiff is not disabled is not supported by substantial evidence  Accordingly, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

The medical evidence demonstrates that Kellerman suffers from diabetes. (R. 248-55, 302-05, 410-15). He has repeatedly been diagnosed with diabetic, peripheral neuropathy and chronic pain syndrome. (R. 248-56, 300, 302-04, 409-15). On April 24, 2009, Kellerman was seen in the emergency room complaining of pain in his back and feet. (R. 256). He was diagnosed with diabetic neuropathy in his feet. (*Id*.) On May 21, 2009, Kellerman was seen by his treating physician, Dr. Edwards Lemmons, who confirmed the diagnosis of diabetic neuropathy. (R. 255). Because Kellerman complained of "constant pain," Dr. Lemmon prescribed Vicodin, a prescription pain medication. (R. 255). Dr. Lemmon has continued

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to prescribe Vicodin for Kellerman's pain, increasing his prescription from 90 tablets a month in January 2010 to 100 tablets in May 2010. (R. 252, 250). Since June 7, 2010, Dr. Lemmons has seen Kellerman every month and prescribed 120 Vicodin tablets **each** month for pain. (R. 248-49, 302-04, 410-15).

The ALJ recited the medical evidence demonstrating that Kellerman suffers from diabetic neuropathy and pain but this is what she says about Kellerman's treating physician and his pain.

> The medical record demonstrates the claimant's treating provider in Exhibit 16F based his opinion on the claimant's symptoms and is not supported by evidence; the EMG/nerve conduction study was negative for neuropathy.
>
> \*      \*      \*
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(R. 26-27).

In this instance, the ALJ's use of generic boilerplate language was not only unhelpful to the court but it is wholly insufficient as a matter of law. It appears that the ALJ discounted Kellerman's pain testimony simply because the EMG/nerve conduction study was negative. However, a negative EMG/nerve conduction study does not demonstrate that Kellerman does not have diabetic neuropathy or pain. Diabetes causes neuropathy by damaging the nerves in the body. *Diabetic Neuropathies: The Nerve Damage of Diabetes*; http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/ (last visited on March 4, 2014). "[A]t

one extreme there are patients with severe neuropathic pain who on examination may have only a minimal deficit, whereas at the other extreme are patients with insensate feet who are asymptomatic and may first present with foot ulcers." Boulton, Andrew, MD. *Management of Diabetic Peripheral Neuropathy*; http://clinical.diabetesjournals.org/content/23/1/9.full (last visited on March 5, 2015).

Despite Kellerman's testimony and the numerous references in the record to pain from his diabetic, peripheral neuropathy, the ALJ makes no other reference to Kellerman's pain. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

In this case, the ALJ wholly failed to articulate any reason for discounting the plaintiff's pain testimony. Rote recitation of the medical evidence is not a substitute for articulating clear reasons for discrediting the plaintiff. The ALJ noted that Kellerman "has been given a large number of hydrocodone," but then suggests that because of that medication, Kellerman is now stable. (R. 23, 27). In so doing, the ALJ ignores the depth of pain that would require that much medication. And it is not at all obvious to the court that the fact that Kellerman takes 120 Vicodin tablets each month for pain is at all sufficient to conclude that Kellerman's condition "is stable." The ALJ's failure to adequately consider

Kellerman's pain is simply deficient as a matter of law.

In addition to diabetic neuropathy, blurred vision and retinopathy are also common complications from diabetes. *See Eye Complications*, http://www.diabetes.org/living-with-diabetes/complications/eye-complications/ (last visited on March 4, 2015). On August 7, 2012, Kellerman underwent a consultative physical examination by Dr. Kishore Chivukula at the request of the Social Security Administration. (R. 474-76). Dr. Chivukula noted that Kellerman had blurred vision and "holes in vision." (R. 474). During the administrative hearing, Kellerman testified that he suffers from blurred vision. (R. 64).

> Q:     How long have you had problems with your vision?
>
> A:     That's been going on for – well, for the past couple of years.
>
> Q:     Now, do you wear glasses at all or contacts?
>
> A:     Well, what I do, I had to go – I went to Walmart and bought a pair of Walmart glasses, which I do have a prescription for glasses that I had to go get, but I just didn't have the money to get them filled.
>
> Q:     And when did you have the eye exam?
>
> A:     The eye exam was – it was last year.
>
> ATTY:  At Walmart?
>
> CLMT:  No. I went to an optometrist. I think that's the correct place.
>
> ALJ:   An optometrist. Counsel, do we have those? Okay. Let's get those records.

(R. 65).

At the end of the administrative hearing, the ALJ again requested that Kellerman

submit the records from his optometrist. (R. 78). Unfortunately, the vision records are not contained in the record.[7]

The lack of evidence in this case regarding the plaintiff's visual acuity is another issue which the ALJ has failed to develop fully. It is clear from the administrative hearing that the ALJ felt it was necessary to secure additional evidence regarding Kellerman's visual acuity before rendering a decision about his disability. However, neither those records nor other evidence of Kellerman's vision is contained in the record.

The ALJ determined Kellerman's his residual functional capacity without taking into consideration of any limitations to his vision.

> [T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant would require a sit/stand option, could not do repetitive push/pulling with his non-dominant left upper extremity, should not operate foot controls bilaterally, would be unable to climb ladders, ropes or scaffolds. He could never crouch or crawl. He would need to avoid unprotected heights and hazardous machinery.

(R. 20).

After setting forth her residual functional capacity conclusion, the ALJ launches into a description of the medical evidence of record. (R. at 21-26). During her recitation of the medical evidence, the ALJ acknowledged that Kellerman suffers from blurred vision.

> In addition, the claimant has visual disturbances. He has blurred vision for the past couple of years. He has prescription glasses but no money to get the prescription filled. He had an eye exam performed last year.

---

[7] Kellerman underwent a consultative examination on October 30, 2010 at which time his vision without lenses was 20/50 in each eye. (R. 298). That sole notation of his vision was eighteen months prior to the administrative hearing, and there are no updated records that reflect Kellerman's current vision.

(R. 21).

This is the extent of the ALJ's discussion of Kellerman's vision. She does not discuss the implications of Kellerman's blurred vision on his ability to perform work. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x. 751, 753 (11th Cir. 2011); *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x. 265, 269 (11th Cir. 2011).

To further compound the court's difficulty with review of this case, during the questioning of the vocational expert, there was some confusion regarding the effects of Kellerman's blurred vision on his ability to perform other work available in the national economy.

> Q   And I guess that leads me to, Dr. McClanahan, any of the jobs that you've just listed for either the sedentary or light require fine, detailed vision, or is that too vague?
>
> A   Near vision?
>
> Q   We don't know.
>
> A   Two of the jobs require the ability to read particularly like a –
>
> Q   Computer screen?
>
> A    – monitor, print on a monitor.
>
> ALJ: Well, let's see this, and we might have to do interrogatories yet anyway.

(R. 78-79)

While it appears undisputed that Kellerman suffers from blurred vision, what is not clear is how this condition *affects* Kellerman's ability to work. However, the ALJ failed to adequately develop the record regarding the plaintiff's blurred vision. Because the ALJ failed to adequately develop the record, she could not, and did not, "discuss meaningfully how [Kellerman's vision] might affect [his] ability to perform" work. *See Barrio v. Comm'r of Soc. Sec. Admin.*, 394 F. App'x. 635, 638 (11th Cir. 2010). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for [her] decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.' " *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam)).

In light of the ALJ's failure to fully and fairly develop the record in this case, the court cannot determine whether the ALJ's residual functional capacity determination or her disability decision regarding Kellerman is correct.[8]

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice

---

[8] A review of the record clearly demonstrates that the ALJ's hypothetical questions to the vocational expert were improper as the ALJ did not include any vision limitations in her questions to the vocational expert. Moreover, when the issue of Kellerman's vision was raised, the vocational expert indicated that she was unable to answer the ALJ's questions without more detailed information regarding Kellerman's vision. (R. 78).

of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

    A separate final judgment will be entered.

    Done this 4th day of March, 2015.

                                           /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE